**United States District Court**
For the Northern District of California

**E-FILED on**  11/3/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAITA DISTRIBUTORS, INC. OF SAN MATEO, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DBI BEVERAGE INC., a Tennessee corporation,<br><br>　　　　　Defendant. | No. C-09-02318 RMW<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 53, 54 and 55]** |

Presently before the court are the motions for summary judgment by plaintiff Maita Distributors, Inc., defendant DBI Beverage, Inc., and intervenor MillerCoors LLC.  The motions came on for hearing before the court on October 30, 2009.  Having considered the papers submitted by the parties, the amicus curiae papers submitted by California Beer and Beverage Distributors, and the arguments of counsel at the hearing on the motions, for good cause appearing, the motions are granted in part and denied in part, for the reasons set forth below.

## I.  BACKGROUND

This litigation involves the constitutionality and applicability of a portion of California's Alcoholic Beverage Control Act, specifically California Business and Professions Code § 25000.2.

**United States District Court**
For the Northern District of California

### A.  The Statute

Section 25000.2 was adopted in 2007 to provide an expedited method to determine the fair market value of the beer distribution rights to be paid to an existing beer wholesaler (distributor) whenever a "successor beer manufacturer" acquires rights to manufacture, import or distribute a product and cancels any of the existing beer wholesaler's distribution rights.

The legislative history summarizes the proposed legislation as "establish[ing] within the Alcoholic Beverage Control Act a framework for determining the fair market value of distribution rights of beer brands in the event that those rights are shifted from one beer wholesaler to another beer wholesaler."  Analysis of Senate Bill 574 prepared for the Assembly Committee on Appropriations, attached as Exh. A to Maita's Request for Judicial Notice.[1]  The purpose of the Act was to "establish a simple wholesaler to wholesaler valuation process for the transfer of brands in order to guarantee fair compensation and efficient transfer of beer products between competing wholesalers when there is an acquisition of a brand by a successor beer manufacturer that uses a different wholesaler network."  *Id.*

The Act sets forth a framework pursuant to which the successor beer manufacture first gives notice of its intent to cancel the distribution agreement, followed by a 30-day period for good faith negotiations between the existing beer wholesaler and the designated successor to determine the fair market value of the beer distribution rights to be paid by the designee to the existing beer wholesaler, followed by mandatory private arbitration on the issue if the settlement negotiations are not successful.  Section 25000.2(d) and (f).  If the settlement negotiations do not result in an agreement, then arbitration is to be commenced within 40 days after the existing beer wholesaler received the beer manufacturer's notice of intent to cancel.  Section 25000.2(f).  The only issue to be arbitrated, unless the parties agree otherwise, is the fair market value of the distribution rights. Expedited discovery is allowed, the arbitration is to be completed within 180 days, and an award shall be issued within 15 days of completion of the arbitration.  The award is final and binding, but the parties have the right to appeal to the superior court in the county in which the arbitration was

---

[1]  The requests for the court to take judicial notice of the legislative history of Section 25000.2 are granted.  *Hunt v.  Check Recovery Sys.  Inc.*, 478 F.  Supp.  2d 1157, 1161 (N.D. Cal.  2007); *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 544 n.4 (2007).

1  held. Section 25000.2(f)(5). If the designee distributor does not pay the award within ten business

2  days, and no appeal is filed, the existing beer wholesaler retains the distribution rights and is not

3  entitled to the award. Section 25000.2(g).[2] The existing beer wholesaler, however, has no

4  equivalent right to reject the award or decline to proceed.

5          While the statutory settlement/arbitration procedure is progressing, and up until receipt of

6  payment of the settlement amount or the arbitration award, the existing beer wholesaler is required

7  to continue to distribute the products to at least the same extent that it distributed them immediately

8  before the successor beer manufacturer acquired the rights to the products. Section 25000.2(e).

9  Both the existing beer wholesaler and the successor beer manufacturer are required to act in good

10 faith regarding the ongoing supply and distribution of the products during this time. *Id.* With the

11 exception of these requirements imposed on both the existing beer wholesaler and the successor beer

12 manufacturer, the exclusive focus of the statute is on the mechanism for determining the fair market

13 value of the affected distribution rights.

14         The statute has no express provision granting successor beer manufacturers a right to cancel

15 distribution agreements, nor does it have any provision addressing the actual transfer of the

16 distribution rights, such as requiring the existing wholesaler to transfer the distribution rights to the

17 designee upon receipt of timely payment of the settlement amount or award.

18 **B. The Parties**

19         Maita Distributors, Inc. of San Mateo County ("Maita") is a family-owned beer distributor.

20 It has distributed Miller and Coors beer since 1977 and 2002 respectively. Maita's contracts with

21 Miller Brewing Company and Coors Brewing Company grant Maita exclusive distribution rights in

22 Maita's territory and may only be terminated for cause. Neither contract expressly authorizes Miller

23 or Coors to terminate the distributorship agreement upon a transfer of products or brands to another

24 entity.

25         In 2008, Miller and Coors formed a joint venture, MillerCoors LLC, in order to better enable

26 them to compete with Anheuser-Busch Company, the largest brewer in the United States. Miller

27 and Coors each transferred their respective brands to MillerCoors, and MillerCoors assumed their

28

---

[2] The statute does not address who has the distribution rights during an appeal, if an appeal is filed.

United States District Court
For the Northern District of California

obligations under the Maita distribution agreements.  Thereafter, in September 2008, MillerCoors gave notice to Maita of its intent to cancel the distribution agreements and designated DBI Beverage Inc. as the successor distributor for its brands in the territory.  DBI is based outside of California and had not been operating as a beer distributor in San Mateo County.  Through the notice, MillerCoors sought to avail itself of California Business & Professions Code Section 25000.2.

Maita objected to MillerCoors' notice, contending that its contracts were terminable only for cause and that MillerCoors had no right to cancel them.  Maita also asserted several arguments why Section 25000.2 did not apply.  MillerCoors and DBI did not agree.

Therefore, with the statutory clock ticking, DBI and Maita engaged in negotiations (the good faith of which is contested by the parties) and within 40 days after Maita had received the notice of intent to cancel, DBI sought to initiate arbitration with JAMS.  Maita resisted the arbitration.

State court litigation ensued, with MillerCoors and DBI seeking to compel arbitration and Maita seeking to enjoin the arbitration from proceeding and further seeking declaratory relief regarding the inapplicability and/or unconstitutionality of the statute.  The state court refused either to compel or enjoin the arbitration and the private arbitration proceedings renewed, albeit with Maita participating reluctantly in order to avoid waiving its rights.

In turn, Maita dismissed the suit it had filed in San Mateo County Superior Court and filed a new lawsuit against DBI in Santa Clara County Superior Court, once again challenging the applicability and constitutionality of Section 25000.2 and seeking to enjoin the arbitration.  DBI thereafter removed the action to federal court and MillerCoors intervened.  The issues raised by the litigation are primarily narrowly defined issues of law – including the constitutionality of the Act and whether it applies to the Maita/MillerCoors agreements – and because these issues are not ones that will be addressed in the pending arbitration, the case was placed on an expedited schedule in order to resolve these issues prior to the commencement of the arbitration hearing in December 2009.

Presently before the court are the cross-motions for summary judgment by Maita, DBI and MillerCoors.  For the most part, the issues and arguments raised in connection with each motion overlap.  The parties disagree over the meaning and applicability of Section 25000.2 to the present

United States District Court
For the Northern District of California

dispute.  Maita contends that the statute does not grant a successor beer manufacturer the right to cancel agreements that are otherwise terminable only for cause; DBI and MillerCoors both contend that the statute grants the successor beer manufacturer the right to cancel.  Maita next contends that if the statute does grant MillerCoors the right to cancel contracts that are otherwise terminable only for cause, then the statute is an unconstitutional impairment of contracts in violation of the Contracts Clause of both the state and federal constitutions.  DBI and MillerCoors both contend that the statute does not violate the Contracts Clause because of the heavy state regulation of the alcoholic beverages industry.  Maita also contends that the statute does not apply to a situation in which the existing distributor already distributes the products of the successor beer manufacturer and that it was not intended to permit a transfer of distribution rights to a distributor who is not presently a licensed distributor and is not already distributing in the applicable territory.  DBI and MillerCoors disagree.  Finally, DBI seeks summary adjudication on the issue that it negotiated in good faith, as required by the statute.  Maita contends that DBI did not negotiate in good faith before initiating arbitration, which Maita contends is a condition precedent to initiating the arbitration.

## II.  ANALYSIS

### A.  **Standards for Statutory Interpretation**

The objective of statutory interpretation is to ascertain and effectuate legislative intent.  The court first looks to the words of the statute to give a plain and commonsense meaning.  *Hughes v. Board of Architectural Examiners*, 17 Cal.4th 763, 775 (1998).  Statutes are to be enforced according to their plain meaning, without resort to legislative history or other intrinsic evidence. *Golden W. Refining Co. v. SunTrust Bank*, 538 F.3d 1233, 1238 (9th Cir. 2008) (quoting *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal.4th 358, 369 (2007) ("If the language of a statute is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature.")  In ascertaining intent, the court looks first to the language of the statute, giving effect to its plain meaning.  *Kimmel v. Goland*, 51 Cal.3d 202, 208-9 (1990).  When statutory language is clear and unambiguous, there is no need for construction, and courts should not indulge in it.  *DaFonte v. Up-Right, Inc.*, 2 Cal.4th 593, 601 (1992).  The court is to avoid reading into the statute words that are not there.  *Yucaipa Water Co. No. 1 v. Public Utilities Comm'n*, 54 Cal.2d 823,

**United States District Court**
For the Northern District of California

831 (1960).  The court cannot "insert what has been omitted, or omit what has been inserted." *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 545 (2007) (internal quotation omitted).  If a statute is amenable to two conflicting interpretations, then courts are "compelled to impute to the statute that meaning which comports with the objective the Legislature sought to achieve." *Industrial Risk Insurers v. Rust Engineering Co.*, 232 Cal.App.3d 1038, 1042 (1991).

If these first two steps fail to reveal clear meaning, "statutes are to be given a reasonable and commonsense interpretation consistent with apparent legislative purpose and intent and which, when applied, will result in wise policy rather than mischief or absurdity." *Dyna-Med, Inc. v. Fair Employment & Housing Com.*, 43 Cal.3d 1379, 1292 (1987).  Finally, wherever possible, courts are to construe a statute so as to preserve its constitutionality.  *Id.* at 1387.

With these standards in mind, the court turns to the task of discerning the "plain and commonsense meaning" of Section 25000.2 in view of the issues raised by the parties.

B. **Issues Raised by the Parties**

1. ***Does Section 25000.2 Apply Where the Existing Distribution Agreement is Terminable Only For Cause?  Yes, But Section 25000.2 Does Not Provide a Right to Cancel.***

The first issue in dispute is whether Section 25000.2 applies to beer distribution contracts that, by their terms, are only terminable for cause.  Maita contends that Section 25000.2 does not apply to such agreements and argues that nothing in the statute or legislative history indicates an intent to deprive distributors of their contractual rights.  Maita also argues that the statute is unconstitutional if it permits cancellation of for-cause contracts and should therefore be construed to avoid such unconstitutionality.

DBI contends that the statute does not distinguish between contracts that are terminable for cause and contracts that may be terminated at will and provides for an independent termination right by a successor manufacturer, contingent on the terminated distributor being compensated.  DBI Opp. at 8.  Similarly, MillerCoors argues that not only does the statute apply to contracts that are terminable only for cause but it affirmatively grants successor beer manufacturers the right to cancel existing distribution agreements and to designate other distributors to replace the existing

distributor.   California Beer and Beverage Distributors ("CBBD"), as amicus curiae, asserts that the statute applies, regardless of whether the distribution contract is terminable for cause or at will, but it does not grant a cancellation right.

As a matter of statutory interpretation, there is nothing within the text of Section 25000.2 or in its legislative history from which the court could reasonably conclude that the statute applies only to contracts that are terminable at will.  Section 25000.2(b) states that a "successor beer manufacturer that acquires the rights to manufacture, import, or distribute a product, and who cancels any of the existing beer wholesaler's rights to distribute the product, shall comply with this section."  Thereafter, the statute sets forth the procedures for giving notice of intent to cancel, good faith negotiations regarding the fair market value of the affected distribution rights, and arbitration of the fair market value of such distribution rights.  Section 25000.2(c) et seq.  There simply is no provision excluding contracts that are terminable only for cause nor limiting application of the statute to contracts terminable at will.  There is similarly nothing within the legislative history that addresses the issue.  The court cannot read into the statute words that are not there.  *Yucaipa Water Co. No. 1*, 54 Cal. 2d at 831; *Doe*, 42 Cal. 4th at 545.

Accordingly, Section 25000.2, by its terms, applies any time a successor beer manufacturer acquires a product and gives notice of its intent to cancel the distribution rights of the existing beer wholesaler, regardless of whether the distribution agreement is terminable at will or only for cause.  However, the statute's limited purpose is to provide the means for determining the fair market value of the existing beer distributorship.  It does not grant a successor beer manufacturer the right to terminate existing contracts.

Each party points to the same statutory language as supporting its position: the language in Section 25000.2(b)(1) that "[a]ny successor beer manufacturer that acquires the rights to manufacture, import, or distribute a product, and who cancels any of the existing beer wholesaler's rights to distribute the product, shall comply with this section."  *Id.* (emphasis added).  No other portion of the statute approaches the issue.

MillerCoors and DBI's contention that Section 25000.2 does provide an unqualified right to terminate a distributorship reads more into the statute than it provides.  MillerCoors argues that

Section 25000.2 "must create an independent right of cancellation that is based solely upon the successor beer manufacturer's status as a successor beer manufacturer." MillerCoors' motion at 8. MillerCoors argues that if a successor beer manufacturer acquires the right to manufacture or import a product, then it may cancel the existing beer wholesaler's distribution rights by following the procedures in Section 25000.2. *Id.* The language of the statute, however, does not support MillerCoors' interpretation, and nothing in the legislative history suggests that the legislature intended, or even contemplated, granting successor beer manufacturers the right to terminate distribution agreements that would otherwise only be terminable for cause.

Maita contends that Section 25000.2 only applies if the existing distributorship is terminable at will but not if cause is required. Maita Motion at 5. There is no language in the statute, nor anything in the legislative history, however, that supports Maita's contention that Section 25000.2 applies only to cases where a successor beer "rightfully" cancels the distribution agreement.

CBBD, as amicus curiae, contends that Section 25000.2 does not itself authorize terminations of any type and argues that the statute's application to a dispute between an existing wholesalers and the successor beer manufacturer is wholly separate from whether or not the termination was consistent with or inconsistent with the particular distribution agreement. Amicus at 3-4. It argues that Section 25000.2 "sets forth procedures in the event of cancellation, but it does not *authorize* cancellation at all." CBBD brief at 3.

The court agrees with CBBD. Nothing in the statutory text expressly grants a right of cancellation; nothing in the statutory text limits its application to contracts that are terminable at will or rightfully canceled. Section 25000.2(b)(1) speaks only to a successor beer manufacturer "who cancels" any existing beer wholesaler's distribution rights. Subsequent sections set forth the procedures to be followed with regard to instigating arbitration and arbitrating the issue of the fair market value of the distribution rights. Had the legislature intended to grant a right to cancel, it easily could have done so. It did not, however, and the court cannot read into the statute words that are not there. *Yucaipa*, 54 Cal.2d at 831.

Moreover, nothing in the legislative history addresses the granting of a right to cancel existing beer distribution agreements. DBI points to one letter in the legislative history in which

CBBD emphasized reduction of beer brand transfer litigation as a purpose underlying the proposed

statute.  The letter to the Governor's Deputy Legislative Secretary specifically noted California's

increase in beer distributor litigation as a result of consolidation in the industry and stated that:

> SB 574 takes the brewer out of the process and effectively out of litigation, and
> allows competing distributors, who are not and never will be in a contract with each
> other, to reach a timely settlement.  SB 574 will end brand transfer litigation to the
> economic benefit of both brewers and California beer distributors and stop the
> economic loss caused by time consuming and costly litigation.  That is why both
> brewers and beer distributors are united in their strong support of SB 574.

August 9, 2007 letter, attached as Ex. B to DBI's Request for Judicial Notice.  The letter also

attached a list of the six brand transfer lawsuits that had been filed in 2006, noting that this

represented a 600% "surge" in beer distributor litigation over the previous level of less than one per

year.  *Id.*  From this, DBI argues that the Act must grant a right of cancellation, otherwise the

purpose of the Act would be undermined and no successor beer manufacturer would choose to

follow Section 25000.2 if the terminated distributor could still bring an action to enforce its contract

with the manufacturer.  DBI's Response to CBBD's Amicus Brief at 1.

However, this snippet of legislative history—a letter from the bill's sponsor after passage of

the bill and before the bill was signed into law by the Governor—is not sufficient to establish a

legislative intent to provide successor beer manufacturers with a right to cancel existing contracts.

More importantly, it cannot be used to create language in the statute that does not exist.  *Doe*, 42

Cal. 4th at 545 (quoting prior case law that "a court ... may not rewrite the statute to conform to an

assumed intention which does not appears from its language").

Instead, the express provisions of the Act and the legislative history underlying it reveal that

Section 25000.2 is quite focused on only one issue: providing an expedited method to **determine**

**the fair market value of the beer distribution rights** to be paid to an existing beer wholesaler

whenever a successor beer manufacturer acquires rights to manufacture, import or distribute a beer

product and seeks to change distributors; nothing more, nothing less.  The legislation does not

address how such contracts are to be cancelled, does not grant any right to cancel, nor does it even

direct that the distribution rights are to be transferred upon payment of what is determined to be the

fair market value of the distribution rights.  The only issue Section 25000.2 addresses is how the fair

market value is to be determined.  All else is left to the parties, their contracts, and their legal rights.

This appears to be an unusual case in which the legislature focused on providing a solution to so narrow an issue—providing a means to efficiently determine the fair market value of beer distribution rights to be paid to an existing distributor—that it failed to address the problem in a sufficiently thorough context.  In any event, the court cannot, as a mater of statutory interpretation, read into the statute a right to cancel existing contracts that does not exist in the statute and is not clearly supported by the legislative history.

Accordingly, the court finds that Section 25000.2 applies any time a successor beer manufacturer cancels a distribution agreement with an existing wholesaler and designates a successor distributor for the territory, but it does not grant a right of cancellation to the successor beer manufacturer.  A successor beer manufacturer is bound by the terms of the contracts it has assumed, and if a contract may only be terminated for cause, then a  successor beer manufacturer who cancels it without cause does so at its peril.

### 3. *Does the Application of Section 25000.2 to the Maita Contracts Substantially Impair Those Contracts in Violation of the Contracts Clause? No.*

Maita argues that if Section 25000.2 is applicable to its distribution contracts, the statute is unconstitutional under the Contracts Clause because it substantially impairs the contracts.  DBI and MillerCoors contend that there is no unconstitutional impairment because of the heavy regulation of the beer industry.  The parties' arguments, however, are predicated on the erroneous assumption that if the statute is applicable it grants a right to cancel the contract.  As discussed above, the statute does not grant MillerCoors the right to cancel Maita's distribution agreements and therefore the statute does not unconstitutionally impair the contracts by doing so.[3]

### 4. *Is DBI a Proper "Successor Beer Manufacturer's Designee" Under Section 25000.2?  Yes.*

---

[3]  If the statute were interpreted to grant a right to cancel contracts that were otherwise terminable only for cause, it would appear that this would result in an unconstitutional impairment of contracts.

Maita seeks declaratory relief that the statute does not apply where a successor beer manufacturer designates a successor beer distributor who does not already do business in the existing territory to take over the distribution rights from an existing distributor. Complaint ¶12(b). DBI seeks summary adjudication that it qualifies as a proper "successor beer manufacturer's designee" under Section 25000.2.

DBI notes that the statute contains an express definition of "successor beer manufacturer's designee" and that it meets the definition. The designee is defined as "one or more distributors designated by the successor beer manufacture to replace the existing beer wholesaler, for all or part of the existing beer wholesaler's territory, in the distribution of the product." §25000.2(a)(9). DBI argues that it is a distributor, selected by MillerCoors, as part of its new distributor network and thus that it is a proper designee under Section 25000.2. DBI's Motion at 7.

Maita argues that DBI is not a proper "successor beer manufacturer's designee" under the statute. Specifically, it contends that "in order for DBI to be a proper designee and the statute to apply, DBI must be a 'distributor' under California law who can 'replace the existing beer wholesaler, for all or part of the existing beer wholesaler's territory.'" Maita Opp. at 12, citing Section 25000.2(a)(9). Maita argues that a beer distributor under California law must be licensed in California[4] and that because DBI is not licensed, it does not qualify as a distributor who can replace Maita in San Mateo County.

Maita also argues that the statute was not intended to apply in the present context. Specifically, Maita points to statements in the legislative history that Section 25000.2 "is intended to establish a simple wholesaler to wholesaler valuation process for the transfer of brands in order to guarantee fair compensation and efficient transfer of beer products between **competing wholesalers** where there is an acquisition of a brand by **a successor beer manufacturer who uses a different wholesaler network.**" Maita Opp. at 11, quoting legislative history (emphasis added by Maita).

_____

[4] Maita's citation to multiple sections of the Business and Professions Code relating to various aspects of licensing requirements applicable to beer distributors is not persuasive. Maita Opp. at 12 n.8. These provisions do not define "distributor" as one who is licensed to distribute beer in the State. To be sure, a distributor will be required to comply with all applicable California licensing laws before commencing distribution of beer within the applicable territory, but an unlicensed distributor is still a distributor.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER

United States District Court
For the Northern District of California

From this, Maita argues that "Section 25000.2 was intended to rectify the situation where a beer manufacturer, because of its acquisition of a new brand, would be supplying different products to competing wholesalers in the same territory. It was not intended to be used by a manufacturer to avoid its contractual obligations to existing distributors in order to award new territory to a large wholesaler." *Id.* Maita further argues that this legislative purpose is not served where the designee is not presently a competing distributor within the territory and where the existing wholesaler already is a consolidated wholesaler with distribution rights to all affected brands.

Maita's argument is creative, but ultimately unavailing because the statute cannot be reasonably construed in the manner Maita suggests. First, Maita's argument is not supported by the statutory language. The statute requires only that the successor beer manufacturer designate one or more distributors to replace the existing wholesaler for all or part of the territory. Although Section 25000.2 does not define the term "distributor," it does use the term interchangeably with "wholesaler," a term more generally used within the statutory scheme.[5] Specifically, 25000.2(g) states that the existing beer wholesaler "shall remain the distributor of the product" if it does not receive the payment from the designee. Thus, a "distributor" under Section 25000.2 is a "wholesaler." Section 23021 defines "wholesaler" as "every person other than a manufacturer ... who is engaged in a business as a ... wholesale merchant, dealing in alcoholic beverages, in an area within the United States ... or within a foreign country having common boundaries with any state of the United States." The term "wholesaler" is not limited to those within California nor is it limited to one who is licensed to distribute in California. Accordingly, the term "distributor" is also not so limited. The legislature may not have envisioned a situation in which a successor manufacturer would assume contracts under which the existing distributor would effectively be a consolidated distributor within that territory and yet would desire to change distributors as part of a nationwide plan to consolidate its distribution network. There is no clear indication, however, that the

---

[5] The plain and commonsense meaning of "distributor" is "wholesaler." The terms are synonymous. *See* Dictionary.com (defining "distributor" is "a wholesaler who has exclusive rights to market within a given territory, the goods of a manufacturer or company"), *http://dictionary.reference.com /browse/distributor*; Merriam-Webster Online Dictionary (defining distributor as "one that markets a commodity; *especially*: wholesaler"), *http://www.merriam-webster.com/dictionary/distributor.*

United States District Court
For the Northern District of California

1  legislature sought to exclude such a situation.  Most importantly, the statutory language does not

2  support Maita's argument.

3      There appears to be no genuine issue of material fact that DBI meets this definition of

4  wholesaler; accordingly, DBI qualifies as a "distributor" who may be the designee of a successor

5  beer manufacturer under Section 25000.2.  DBI is entitled to summary adjudication in its favor that

6  it is a proper designee under Section 25000.2.

7      **5.**   ***Is DBI Entitled to Summary Adjudication That It Negotiated in Good Faith In***

8           ***Compliance With Section 25000.2?  No, Material Facts Are in Dispute***.

9      The final issue presented is whether DBI negotiated in good faith in the 30-day period

10  following MillerCoors' notice of intent to cancel Maita's distribution rights as required by Section

11  25000.2.  Maita's Complaint asserts that under Section 25000.2, good faith negotiation is a condition

12  precedent to the right to arbitrate and that DBI's failure to negotiate in good faith precludes the

13  arbitration from proceeding.  DBI seeks summary adjudication that it negotiated in good faith as

14  required by Section 25000.2.  Maita contends that it did not.  Both sides support their positions with

15  declarations.  Maita's evidence and argument reduce to the assertion that DBI did not negotiate in

16  good faith because Maita did not receive any offer to purchase the distribution rights within the first

17  thirty days.  DBI submits evidence that it did extend an offer, which Maita apparently did not

18  receive and DBI resubmitted.  Material facts are in dispute, and summary adjudication cannot be

19  granted on this issue.

20

21           **III.  CONCLUSION AND ORDER**

22      As set forth more fully above, California Business and Professions Code Section 25000.2 has

23  a narrow scope, setting forth a procedure for determining the fair market value of distribution rights

24  when a successor beer manufacturer acquires brands, gives notice of its intent to cancel an existing

25  distribution agreement, and designates a successor distributor.  It does not, however, grant a right to

26  cancel existing contracts, and any successor beer manufacturer who cancels a distribution agreement

27  in violation of the terms of such agreement is not absolved of liability for such breach of contract.

28

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER                                        13

1    Because the statute does not grant a right to cancel contracts that are otherwise terminable only for

2    cause, the statute also does not unconstitutionally impair such contracts by doing so.

3

4

5            Accordingly, the court grants and denies the parties' motions for summary judgment as

6    follows:

7        1.    Maita's motion for summary adjudication that Section 25000.2 does not override

8              Maita's existing contracts and allow MillerCoors LLC to terminate contracts that

9              cannot be terminated except for cause is GRANTED;

10       2.    Maita's motion for summary adjudication that Maita cannot be forced to arbitrate the

11             value of its distribution rights pursuant to Section 25000.2 is DENIED;

12       3.    DBI's motion for summary adjudication that it is a proper successor beer manufacturer's

13             designee under Section 25000.2 is GRANTED;

14       4.    DBI's motion for summary adjudication that it negotiated the purchase of the affected

15             distribution rights in good faith is DENIED;

16       5.    MillerCoors' motion for summary adjudication that Section 25000.2 applies when the

17             existing beer wholesaler already distributes all of the successor beer manufacturer's

18             brands is GRANTED; and

19       6.    MillerCoors' motion for summary adjudication that Section 25000.2 applies to contracts

20             that are terminable for cause and to contracts terminable at will is GRANTED, although

21             as noted elsewhere in this order, Section 25000.2 does not grant successor beer

22             manufacturers a right to cancel existing distribution agreements.

23

24

25   DATED:        11/3/09                          _Ronald M Whyte_____

26                                                 RONALD M. WHYTE
                                                   United States District Judge
27

28

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER                                            14

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Craig S. Ritchey | eFilingPA@dorsey.com |
| John G. Hursh | eFilingPA@dorsey.com |
| Karen Elizabeth Wentzel | eFilingPA@dorsey.com |
| Patricia Anne Welch | eFilingPA@dorsey.com |

**Counsel for Defendant:**

| | |
|---|---|
| Elise Kathryn Sara | esara@sheppardmullin.com |
| Jonathan P. Hersey | jhersey@sheppardmullin.com |
| Mark Kenneth Slater | mslater@sheppardmullin.com |

**Counsel for Intervenor:**

| | |
|---|---|
| Jesse Frank Ruiz | jfr@robinsonwood.com |
| Alissa Brett Rubin | arubin@kslaw.com |
| Michael W. Youtt | myoutt@kslaw.com |
| Russell D. Workman | rworkman@kslaw.com |

**Counsel for *Amicus* CBBD:**

| | |
|---|---|
| Brian C. Rocca | brian.rocca@bingham.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   11/3/09                              TER
                                        **Chambers of Judge Whyte**

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-09-02318 RMW
TER                                                          15